## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| **Individually and on behalf** | ) | |
| **of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil No. 1:17-CV-053-RGA** |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **TRINITY LOGISTICS, INC.,** | ) | |
| **a Delaware corporation,** | ) | |
| | ) | |
| **PINKERTON CONSULTING AND** | ) | |
| **INVESTIGATIONS, LLC** | ) | |
| **a Delaware limited liability company,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Comes now the Plaintiff, JANE DOE, individually and on behalf of all other similarly situated individuals, for her First Amended Class Action Complaint and alleges the following individual and class claims:

## NATURE OF THE CASE

1.      Plaintiff brings this action against Defendants for violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681b(b)(3), 1681k(a)(1), 1681b(a), 168e(a) & 1681e(b).

2.      Plaintiff was terminated from her job at Trinity Logistics, Inc., ("Trinity") because Trinity relied on an inaccurate and derogatory consumer report about her.

3.      Trinity obtained the employment-purposed report from Pinkerton Consulting and Investigations, LLC, ("Pinkerton"), which report contained an erroneous criminal conviction

record.  As a result of Trinity's use of the erroneous consumer report, Plaintiff was left jobless and humiliated.

4.      Pinkerton Consulting and Investigations, LLC, has been in existence as a private company since its founding in 1850 as the Pinkerton National Detective Agency by Allan Pinkerton.  Today, Pinkerton describes itself as a company that offers "organizations a range of corporate risk management services from security risk management and investigations to executive protection, global screening and protective intelligence." With employees and offices worldwide, Pinkerton markets its risk management services, including its employment-purposed consumer reports, throughout the world.

5.      Pinkerton specifically markets itself as a company that provides Employment screening services, including "**Employment Background Checks.**" **It's Employment Screening brochure advertises:**

> Pinkerton offers comprehensive, legally-compliant employment background screenings that are reliable and fast. Our screening reports mitigate risks associated with hiring, retention, business partners, and vendors. Pinkerton provides federal, state, and county criminal searches, federal and state civil searches, and employment history and education verifications.

6.      Pinkerton understands that the employment background checks it supplies are consumer reports governed by the FCRA.  On its website, it provides Compliance resources for disclosure and policy information that "may impact" its customers and their employees including information about file disclosures, Fair Credit Reporting Act, notices to furnishers and users of information, and the FCRA summary of rights.

7.      Pinkerton also has a section of its website that provides links where consumers can obtain a consumer disclosure, a copy of their consumer reports, and submit a dispute.

8.      Pinkerton provides many different customizable employment-purposed consumer reports to users of consumer reports, including utilizing their "global network of resources, Pinkerton offers" searches for federal bankruptcies, liens, judgments, media, UCC filings, credit checks, comprehensive business search, commercial drivers' licenses, sanctions checks, worker's compensation.  It also provides state, county, federal and international criminal searches, as well as federal civil records searched.

9.      Pinkerton also claims to offer "fast and accurate" screening solutions by industry:

Pinkerton has developed expertise in providing fast and accurate screening solutions that are often unique to – and may be required for – a number of specific types of industries. Some of our industry-specific expertise is listed here.

Amusement parks and attractions, Contractors, Education, Financial services, Healthcare, Non-profit, Public sector, Retail, Social networking, Staffing, Tenant screening, and Transportation.

10.     At the same time, on its website, Pinkerton expressly disclaims any accuracy in its consumer reports:

Pinkerton strives to deliver accurate and timely information products to assist its clients in making intelligent and informed decisions. To this end, Pinkerton assembles information from a variety of sources including databases containing information from public records and other information repositories and third party researchers. These information sources are not maintained by Pinkerton, and Pinkerton cannot be a guarantor that the information provided from these sources is absolutely accurate. Pinkerton expressly disclaims any and all such warranties

11.     Pinkerton also disclaims that the consumer reports that it markets and sells for employment purposes can be used for employment purposes.

12.     Pinkerton's global headquarters are in Ann Arbor, Michigan, but it also has offices in California, Maryland, Illinois, Florida, Georgia, Virginia, Texas, Massachusetts, Colorado, Indiana, Nevada, Mexico, Oklahoma, New Jersey, New York, Pennsylvania, Nebraska, Arizona, Washington, Missouri, Oregon, Canada, Brazil, United Kingdom, Netherlands, Taiwan, Sweden,

Poland, Czech Republic, Washington, D.C., United Arab Emirates, Germany, India, Indonesia, and China.

13.     Pinkerton is a wholly owned subsidiary of Securitas Services, Inc. (SSI).  In turn, SSI is a wholly-owned subsidiary of Securitas Holdings, Inc., (SHI).  And SHI is wholly owned by Securitas AB, a Swedish corporation.

14.     Pinkerton employs approximately 112,000 individuals in North America alone.

15.     Pinkerton is aware of the entire text of the FCRA and its legislative history as well as the regulatory oversight by the Federal Trade Commission.

16.     Trinity Logistics, Inc. is a privately held company that was founded in 1990 as a third-party logistics company specializing in freight management and supply chain solutions.

17.     Trinity has 300 employees at 95 locations throughout the United States and Canada.

18.     Trinity's headquarters are located in Delaware, but it also has regional service centers in Texas, Iowa, Minnesota, and Missouri.

19.     As of March of 2016, Trinity had $400 million in annual sales.

20.     As part of its hiring process, Trinity uses employment-purposed consumer reports generated by Pinkerton to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the criminal information contained in the consumer reports, Trinity is obliged to adhere to certain strictures of the FCRA.

21.     Trinity knows about its obligation to comply with the FCRA.

22.     Pinkerton operates a large database of public records and related employment histories as a nationwide consumer reporting agency ("CRA"). Pinkerton maintains an FCRA database to prepare and furnish consumer reports for employment and other purposes. Pinkerton provided these consumer reports to prospective and existing employers, including Trinity and the

prospective employers of putative class members. These employers refused to hire Plaintiff and other putative class members based in whole or in part on the contents of the consumer reports.

23.     When using criminal-background reports for employment purposes, "users" must, before taking any adverse action based in whole or in part on the contents of the report, provide job applicants like Plaintiffs with a copy of their respective reports as well as a written summary of their rights under the FCRA.

24.     Providing a copy of the consumer report containing criminal background information as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based consumer reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

25.     To complete this process—consideration of the employment reports and sending of the mandatory FCRA notices—Trinity hired Pinkerton, which operates in this case and many other instances as both the consumer reporting agency generating the background check as well as the agent of the employer to execute all decisions based on the information contained therein.

26.     Each Defendant is informed of the necessary rigors FCRA compliance imposes, as the facts alleged in this case have been the subject of litigation against Pinkerton, as well as other users of consumer reports and consumer reporting agencies.

27.     Plaintiff brings nationwide, class claims against Trinity under 15 U.S.C. § 1681b, because it, as an omission in its hiring process, failed to provide Plaintiff with a copy of her employment-purposed, criminal-background consumer report or a summary of her rights under the FCRA at least five days before taking an adverse action against her.

28.     Plaintiff also asserts nationwide class claims against Pinkerton under 15 U.S.C. § 1681k(a), because Pinkerton provided Plaintiff's employer with a consumer report containing inaccurate criminal information likely to adversely affect Plaintiff's ability to obtain employment without providing Plaintiff with notice at the time it provided the report to Trinity. Plaintiff further alleges that Pinkerton does not employ strict procedures to ensure the information it reports about consumers for employment purposes is complete and up-to-date.

29.     Plaintiff also asserts a nationwide class claim against Pinkerton under 15 U.S.C. § 1681b because it adjudicated the Plaintiff's consumer report by "flagging it" and verifying that the criminal records contained in the Plaintiff's consumer report precluded employment under its customer, Trinity's, hiring criteria.

30.     Plaintiff also asserts a nationwide class claim against Pinkerton under 15 U.S.C. § 1681e(a) and 1681b(a) because it provided a consumer report to Trinity, an employer, without a permissible purpose to do so and without reasonable procedures in place to assume the proper use of and lawful purpose of such report.  Pinkerton provided a report that, on its face, states that the consumer report it supplied about Ms. Doe is not to be used to make employment decisions, yet it supplied such a report to an entity that obtained and used it for an employment purpose.

31.     Plaintiff brings an individual claim under 15 U.S.C. § 1681e(b) against Pinkerton because of inaccuracies contained in the consumer reports. Pinkerton sold to Trinity a report about Plaintiff that "verified" she was convicted of a crime, but which criminal record was expunged, and thus a legal nullity.

32.     Plaintiff brings an individual claim against Trinity under 15 U.S.C. § 1681b(f) for obtaining and using a consumer report without a permissible purpose to do so.  Because Pinkerton supplied Trinity with a consumer report that was not to be used for employment purposes and

could not be relied upon to be accurate, the use and reliance upon the report for Plaintiff's employment was in violation of the FCRA.

33.     In addition, the report was so misleading as to be inaccurate.  The fact that a criminal conviction had long ago been expunged and which contained arrest nolle prosqui records older than seven years, but was nonetheless reported by Pinkerton to Trinity demonstrates not only that the report was inaccurate and obsolete, but also that Pinkerton did not have strict procedures in place to ensure the record was both complete and up to date.

## PARTIES

34.     Plaintiff Jane Doe is a "consumer" as defined by 15 U.S.C. § 1681a.

35.     Ms. Doe lives in Delaware, which is within the territorial confines of the District of Delaware United States District Court.

36.     Trinity is a privately-held, for-profit Delaware corporation with its principal place of business in Seaford, DE.  Trinity conducts business and hires employees in the District of Delaware and throughout the United States.

37.     Trinity is also a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers," as those terms are defined by 15 U.S.C. § 1681a.

38.     Defendant Pinkerton is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), that sells, furnishes, and uses consumer reports and services in the District of Delaware and throughout the United States.

39.     Pinkerton is a Delaware corporation with a principal place of business in Ann Arbor, MI.  Pinkerton conducts business and hires employees in the District of Delaware and throughout the United States.

**JURISDICTION AND VENUE**

40.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

41.     Venue is proper in the District of Delaware because Defendants are subject to personal jurisdiction in this District, maintain places of business in this District, and make employment decisions and/or sell consumer reports regarding individuals residing in this District. 28 U.S.C. § 1391(c). Further, Plaintiff is a resident of this District.

**GENERAL FACTUAL ALLEGATIONS**

42.     During the class period, Pinkerton furnished an employment-purposed consumer report concerning Plaintiff to her employer, Trinity.

43.     Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by consumer reporting agencies ("CRAs"), including public record information.

44.     Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by prospective employers and other individuals.

45.     The FCRA mandates that a report user, before taking any adverse action based in whole or in part on a consumer report, must provide to the consumer a copy of the applicant's report and a summary of the applicant's rights under the FCRA.

46.     Trinity and Pinkerton, upon information and belief, are parties to an agreement whereby Pinkerton furnishes customized, employment-purposed consumer reports about prospective and current employees.

47.     Under the FCRA, Trinity must certify that each consumer report it requests is for a permissible purpose.

48.     Pinkerton may not supply a consumer report to Trinity without obtaining a certification that the consumer report is being provided for a permissible purpose enumerated in the statute.

49.     Trinity and Pinkerton each have an independent obligation to comply with the FCRA.

50.     Although Trinity—and Pinkerton, through its automatic adjudication process to flag reports that have derogatory information—deem an applicant ineligible for hire based in whole or in part on a consumer report, they do not notify the applicant of that fact until after the decision not to hire has been finalized.

51.     Upon information and belief, Trinity delegates the determination of an applicant's employability to Pinkerton, which then applies Trinity's hiring criteria to the applicant's consumer report immediately after creating it. Pinkerton also acts to code and adjudicate Trinity applicants as well as applicants for other employers.

52.     Neither Trinity nor Pinkerton provides a pre-adverse action notice to job applicants, together with a copy of the applicant's consumer report and a description of the applicant's rights as required by 15 U.S.C. § 1681b(b)(3).

53.     Trinity's violations of the FCRA have been willful, wanton, and reckless in that it knew, or should have known, that it was failing to comply with the requirements of the FCRA.

54.     Trinity's willful disregard of its duties violates the FCRA as a matter of law, and it exacts serious consequences on job applicants and interstate commerce. The natural result of Trinity's failures to abide by the conditions, procedures and limitations of the FCRA prejudices consumers' ability to challenge information contained in consumer reports provided to Trinity.

55.     Similar to Trinity's violations, Pinkerton does not provide notification to consumers that it furnished an employment-purposed consumer report containing a criminal record likely to adversely affect employment at the time it provides the report to the employer or otherwise adjudicates the employment eligibility of the consumer according the employer's hiring policies.

56.     Pinkerton expressly disclaims that it is providing the consumer report to Trinity for employment purposes, yet Pinkerton markets and sells the consumer reports as accurate, legally compliant, and for "hiring and retention of employees."

### THE EXPERIENCE OF THE REPRESENTATIVE PLAINTIFF

57.     Ms. Doe applied for a job at Trinity on or about August 6, 2016.

58.     Trinity requested that Ms. Doe complete an employment application and consumer report authorization and release form.

59.     On or about August 22, 2016, Trinity's employee, Hillary Wright, called Ms. Doe by phone and offered her a job.  That same day, Trinity emailed a job offer letter to Ms. Doe.  (Ex. A).  The offer of employment stated that the full-time position was supposed to start on September 12, 2016, at an hourly rate of $12.

60.     On or about August 22, 2016, Ms. Doe accepted the job by signing the offer letter and sending it back to Trinity.

61.     On or about August 22, 2016, Ms. Doe completed the necessary paperwork, signed and delivered it to the Trinity office.

62.     After delivering the completed employment paperwork, Ms. Doe submitted to a drug test.  She was given a tour of the Trinity jobsite and introduced to her new co-workers.  She was excited about her new job and bought new clothes appropriate for her new workplace.

63.     Trinity purchased an employment-purposed consumer report about Ms. Doe from Pinkerton, which was requested on August 25, 2016, and fulfilled by Pinkerton in accordance with its standard procedures on August 26, 2016.

64.     Thereafter, on August 26, 2016, and in accordance with Pinkerton's standard procedures, Pinkerton furnished Ms. Doe's consumer report to both Trinity and to itself, as Trinity's agent and the party responsible for making the actual hiring decision for Trinity by "flagging" the report as containing a criminal record, marking the report in bold with the words "FLAGGED ORDER."

65.     Unbeknownst to Ms. Doe, Trinity and/or Pinkerton used the consumer report it obtained and/or created to take an adverse-employment action against her. Upon information and belief, as Pinkerton is under contract with Trinity, in accordance with the contract, Pinkerton applied Trinity's pre-defined hiring criteria and coded Ms. Doe to be ineligible for employment. Pinkerton did not notify Ms. Doe she was not hired, it did not provide Ms. Doe with a copy of the report containing the criminal record, and it did not provide her with a summary of rights under the FCRA.

66.     This adjudication and coding the report as "FLAGGED ORDER" constituted an "adverse action" by Pinkerton and Trinity.

67.     Pinkerton's decision to code Ms. Doe as ineligible for hire was based upon a "hit" containing criminal records attributed to Ms. Doe and furnished in her consumer report.

68.     The hit included an inaccurate criminal record from Maryland attributed to Ms. Doe.

69.     The record contained information that should never have appeared in any consumer report because it had been expunged nearly four years prior to the report.

70.     In addition to the fact that the report contained information that was expunged, it also contained un-adjudicated misdemeanor charges *nolle prosqui* and that predated the report by more than seven years.

71.     Not only should the report never have contained expunged records, it should never have contained obsolete arrest information more than seven years old.

72.     The Order Summary contained a statement that there were "2 of 2 reports."  The summary regarding criminal information included a "verification" that there was a "flagged" result in the National Criminal Database.

73.     On August 26, 2016, Trinity's employee, Hillary Wright, called Ms. Doe on the telephone to inform her that Trinity had obtained a "background screening" report (employment-purposed consumer report) that contained criminal conviction and charging information.

74.     Ms. Doe explained that the criminal conviction was improperly reported and should not have been on her record at all because it had been expunged nearly four years earlier, in October of 2012.

75.     Ms. Wright called Ms. Doe back 20 to 30 minutes later, after speaking to a company director, and terminated Ms. Doe's employment, which is an adverse action as defined in the FCRA.

76.     At the time Ms. Wright, on behalf of Trinity, notified Ms. Doe of the adverse employment action, Trinity did not supply Ms. Doe with a required copy of the employment-purposed consumer report or notice that it had obtained such a report that was likely to have an adverse impact on her employment.

77.     Trinity was required by the FCRA to provide the report as well as a notice to Ms. Doe that it had obtained such a report at least five business days prior to making a decision to take adverse action.

78.     At the time that the consumer report was assembled, disbursed and used by Pinkerton, the source of the information -- the Anne Arundel County, Maryland clerk's office -- did not have any expunged records pertaining to Ms. Doe, and it was therefore impossible that Pinkerton, or anyone acting on its behalf, obtained the complete and up-to-date record for Ms. Doe.

79.     Upon information and belief, Pinkerton obtained out-of-date and incomplete information about Ms. Doe from either its own incomplete and outdated database or the database of a third party.

80.     On August 29, 2016, Ms. Doe called Ms. Wright at Trinity and stated that she had not received a "Pre-Adverse Action Letter" prior to being terminated from employment.

81.      On August 31, 2016, five days after taking the adverse action of terminating Ms. Doe's employment, Trinity sent Plaintiff via email a letter, which purported to be a "Pre-Adverse Action Letter."  (Ex. A).

82.     By entitling the email "Pre-Adverse Action Letter," Trinity could not undo the fact that it had already had taken the adverse action without providing the proper notice and consumer report to the Ms. Doe, and that it already knew that the report was inaccurate.

83.     The communication contained (i) an undated Word document entitled "REQUESTED INFORMATION" with the all-capitalized warning "THE FOLLOWING INFORMATION SHOULD NOT BE USED FOR EMPLOYMENT DECISION PURPOSES," (ii) a Pinkerton Employment Screening report requested by Trinity that read, "Received:

8/25/2016" and "Completed 8/26/2016"; and (iii) A Summary of Your Rights Under the Fair Credit Reporting Act, with the New York State Correction Law notice.  (Ex. B).

84.     Both Trinity and Pinkerton knew that the only purpose for requesting, obtaining and using the report was to make an employment decision.

85.     On August 31, 2016, Ms. Doe called Pinkerton to inform it that the consumer report supplied to Trinity was inaccurate and had an adverse impact on her employment.

86.     On September 7, 2016, Trinity sent to Plaintiff via email a "Final Adverse Action Letter."  (Ex. C).

87.     Also on September 7, 2016, Pinkerton's manager of the dispute department called Plaintiff and stated that Pinkerton's records showed that Plaintiff did not have any criminal convictions.

88.     On September 8, 2016, Pinkerton sent to Ms. Doe via U.S. Mail a reinvestigation of disputed information contained in Plaintiff's employment-purposed consumer report.  (Ex. D). The reinvestigation acknowledged that the initial report was inaccurate and it contained an accurate report, which included no criminal charges or convictions on Ms. Doe's record.

89.     Pinkerton's letter indicated that it had sent a copy of the new report to Trinity.

90.     Trinity did not reverse its decision to terminate Ms. Doe's employment.

91.     Trinity failed to provide a consumer report and pre-adverse action notice at least five business days prior to taking adverse action, which is Congressionally-mandated information to which Ms. Doe was entitled.

92.     Trinity knew of its obligation to comply with the FCRA in obtaining, using and taking adverse action based on a consumer report.  It knew about the FCRA and its requirements regarding procurement and use of employment-purposed consumer reports.  Trinity purports to

comply with the requirements of the FCRA.  Yet, it intentionally or recklessly failed to protect Ms. Doe's substantive rights in procuring and using her consumer report to make an employment decision.

93.     Trinity's failure to provide Ms. Doe with her consumer report and a timely pre-adverse action notice was not a mistake, but was exactly as it intended.

94.     Pinkerton failed to use strict procedures to ensure its report about Ms. Doe contained information that was complete and up-to-date.  The report, in fact, contained information that was a legal nullity for nearly four years, and thus failed to exclude the information that was by court order expunged.

95.     Despite failing to maintain strict procedures, Pinkerton made the decision to keep Ms. Doe in the dark by refusing to supply her with a copy of the report at the time it provided the report to Trinity.

96.     The only purpose for which Plaintiff believed she was authorizing the use of a consumer-report was for employment purposes.

97.     Upon information and belief, Trinity certified to Pinkerton that it had a permissible purpose to obtain the Plaintiff's consumer report.  Because Pinkerton expressly disclaimed the use of Ms. Doe's report for employment purposes on the face of the consumer report itself, which Trinity knew, Plaintiff alleges that neither Trinity nor Pinkerton had a permissible purpose for accessing and using her report.

98.     The disclosure and authorization form that Plaintiff believes that she signed was only for the purpose of obtaining an employment-purposed consumer report.

99.     Had Ms. Doe been informed that the report being obtained was for any other purpose than an employment purpose, she would not have authorized the report.  Had she been

informed that the consumer reporting agency expressly disclaimed the accuracy of and use of the report for employment purposes, she would never have authorized the report.

100.    As a result of Trinity's actions and inaction, Plaintiff suffered loss of income and other economic losses, humiliation, damage to her reputation, emotional distress, loss of sleep, loss of appetite, relational strain, inconvenience, deprivation of congressionally-mandated information, and invasion of her privacy.

101.    As a result of Pinkerton's actions and inaction, Plaintiff suffered loss of income and other economic losses, humiliation, damage to her reputation, emotional distress, loss of sleep, loss of appetite, relational strain, inconvenience, deprivation of congressionally-mandated information, and invasion of her privacy.

## CLASS ACTION ALLEGATIONS

### PLAINTIFFS' PROPOSED CLASSES

102.    Plaintiff brings this action on a class basis, with initial class definitions that follow.

103.    ***The § 1681b(b)(3) Notice Class, on or after August 26, 2016.*** Ms. Doe brings this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following "Notice Class," of which she is a member, initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were employees of Trinity or who applied for an employment position with Trinity (b) as part of this application process were the subject of a consumer report used by Trinity and/or Pinkerton on or after August 26, 2016, and through the pendency of this action (c) where that consumer report contained an item that would disqualify the person from such position under Trinity's hiring policies, (d) which consumer was not then approved or hired for the position, (e) and to whom Trinity did not provide a copy of the consumer report and other disclosures required by 15 U.S.C. § 1681 b(b)(3)(A)(i) & (ii) at least five business days before the date the employment decision was made.

104.     ***The § 1681b(a) Impermissible Purpose Class, on or after August 25, 2016.*** Ms. Doe brings this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following "Impermissible Purpose Class," of which she is a member, initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were employees or who applied for an employment position with an employer (b) as part of this application process (c) the employer procured or caused to be procured a consumer report for employment purposes (d) by Pinkerton (e) on or after August 25, 2016, (f) in violation of the Fair Credit Reporting Act permissible purpose requirements at l5 U.S.C. § 1681b(a)(3)(B).

105.     ***The § 1681k(a)(1) Notice Class, on or after August 25, 2016.*** Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681k, Plaintiffs bring this action for themselves and on behalf of the following "Pinkerton Notice Class," of which she is a member, initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report issued after August 25, 2016, (b) that was furnished by Pinkerton for an employment purpose, (c) that contained at least one public record of a criminal conviction or arrest, and (d) to whom Pinkerton did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.

106.     ***The § 1681e(a) Impermissible Use Class on or after August 26, 2016.*** Ms. Doe brings this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following "Impermissible Use Class," of which she is a member, initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were employees of Trinity or who applied for an employment position with Trinity (b) as part of this application process (c) Trinity procured or caused to be procured a consumer report for

employment purposes (d) by Pinkerton (e) on or after August 25, 2016, (f) in violation of the Fair Credit Reporting Act permissible purpose requirements at l5 U.S.C. § 1681e(a).

107.    ***The § 1681c(a) Obsolete Information Class on or after August 26, 2016.*** Ms. Doe brings this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following "Obsolete Information Class," of which she is a member, initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were the subject of a consumer report for employment purposes (b) provided by Pinkerton (c) on or after August 26, 2016, (d) containing a record of an arrest antedating the report by more than seven years in violation of 15 U.S.C. § 1681c(a)(2)&(5)

108.    **Numerosity.**   Upon information and belief, the putative Classes exceed 50 members each.  Information concerning the exact size of the putative Class is within the exclusive possession of Defendants or their agents.

109.    The Class members are so numerous that joinder of all members is impracticable.

110.    **Typicality.** Plaintiff's claims are typical of the claims of the other Class members as all Class members were similarly affected by Defendants' unlawful conduct in violation of the FCRA.

111.    **Adequacy.** Plaintiff will fairly and adequately protect the interest of the Class Members and have retained counsel competent and experienced in complex litigation. Plaintiff is a member of the Classes and does not have any interests antagonistic to or in conflict with the members of the Classes. Plaintiff's claims are the same as those of the Classes, which all arise from the same operative facts and are based upon the same legal theories.

112.   **Commonality.**   Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including by example only and without limitation:

   a.   Whether the uniform failure to provide timely a copy of employment purposed consumer reports containing a negative public record violated the FCRA;

   b.   Whether the timing of Defendant's notice to consumers that employment may be declined or terminated based in whole or in part on information contained in a consumer report satisfies the timing requirements at 15 U.S.C. § 1681b(b)(3);

   c.   Whether the adjudication of the Plaintiff's application constituted an "adverse action";

   d.   Whether Pinkerton's disclaimer that the report was not to be used for employment purposes rendered the Plaintiff's authorization a nullity and the procurement of the report illegal;

   e.   Whether Defendant Pinkerton maintains strict procedures designed to insure complete and up-to-date reports when it never obtains a complete and up-to-date court record, therefore § 168lk(a)(2) is inapplicable;

   f.   Whether Pinkerton supplied consumer reports that contain criminal arrest information that antedated the report by more than seven years;

   g.   Whether Pinkerton supplied employment-purposed consumer reports to users without a permissible purpose to do so in violation of 15 U.S.C. § 1681e(a);

   h.   Whether Trinity obtained and used employment purposed-consumer reports from Pinkerton without a permissible purpose to do so in violation of 15 U.S.C. § 1681b(f);

   i.   Whether Defendants' violations of the FCRA were "willful."

113.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Classes is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

114.    Further, the prosecution of several actions by individual members of the Classes would create a risk of varying adjudications with respect to members of the Class, as well as create inconsistent standards of conduct for those opposing the Classes. Additionally, individual actions by members of the Classes may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

115.    **Predominance.** The claims of the class members, including the common questions of law and fact, predominate over any individual facts or legal issues present in the class claims. There are no factual or legal issues that differ among the putative class members. The principal issues are: (a) whether Defendants obtained or supplied a consumer report to third parties about Plaintiff and each putative class member for a permissible purpose; (b) whether Defendants had reasonable procedures in place to comply with section 1681b; (c) whether Defendants required that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose; (d) whether Defendants made a reasonable effort to verify the uses certified by Trinity prior to furnishing such user a consumer report; (e) whether the Pinkerton maintained strict procedures to ensure that the criminal public records were complete and up-to-date; (f) whether Pinkerton supplied consumer reports that contained obsolete information.   Defendants' violations were

negligent, reckless, knowing or intentionally committed in conscious disregard for the rights of the Plaintiff and putative class members.

116.    The members of the classes can be identified and ascertained by using the Defendants own records such as Trinity's records of job applicants and Pinkerton's records of consumer reports it sold.

### COUNT ONE – CLASS CLAIM AGAINST TRINITY & PINKERTON
### Failure to Provide Pre-Adverse Action Notice – Copy of Report
### 15 U.S.C. § 1681b(b)(3)(A)(i)

117.    Plaintiff realleges and incorporates by reference all preceding allegations of law and fact.

118.    Congress mandated that consumers have a right to the information in their consumer reports when users of consumer reports for employment purposes, such as Trinity and Pinkerton in this case, make decisions based on such reports before such a decision is made.

119.    Courts, the Federal Trade Commission and the Consumer Financial Protection Bureau have made the determination that a consumer is entitled to at least five business days prior to taking adverse action.  This requirement serves to protect the consumer's right to information guaranteed by the statute.

120.    Trinity willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) by failing to provide a copy of the consumer report used to make an adverse employment decision to Plaintiff and the "Notice Class" before taking adverse action that was based in whole or in part on that report.

121.    Pinkerton willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) by failing to provide a copy of the consumer report used to make an employment decision to Plaintiff and the "Notice Class" before taking adverse action that was based in whole or in part on that report when it

"FLAGGED" consumer reports containing an adverse criminal record in accordance with the hiring policies of its employer customers.

122.    Plaintiff and the "Notice Class" members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

123.    Plaintiff and the "Notice Class" members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2) and equitable and/or injunctive relief.

124.    In the alternative to the allegations that these violations were willful, Plaintiff and the "Notice Class" members allege that the violations were negligent and seek issue certification of that issue and an appropriate remedy, if any, pursuant to 15 U.S.C. § 1681o and Fed. R. Civ. P. 23(c)(4).

125.    Plaintiff seeks attorneys' fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

**COUNT TWO – CLASS CLAIM AGAINST TRINITY & PINKERTON**
**Failure to Provide Pre-Adverse Action Notice – Summary of Rights**
**15 U.S.C. § 1681b(b)(3)(A)(ii)**

126.    Plaintiff realleges and incorporates by reference all preceding allegations of law and fact.

127.    Trinity willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by failing to provide a copy of the Summary of Rights required by the FCRA to the Plaintiff and the "Notice Class" Members before taking adverse action that was based in whole or in part on a consumer report.

128.    Pinkerton willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by failing to provide a copy of the Summary of Rights required by the FCRA to the Plaintiff and the "Notice Class" Members before taking adverse action that was based in whole or in part on a consumer report.

129.     Plaintiff and "Notice Class" Members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A) and equitable and/or injunctive relief.

130.     Plaintiff and "Notice Class" Members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

131.     In the alternative to the allegations that these violations were willful, Plaintiff and "Notice Class" Members allege that the violations were negligent and seek issue certification of that issue and an appropriate remedy, if any, pursuant to 15 U.S.C. § 1681o and Fed. R. Civ. P. 23(c)(4).

132.     Plaintiff seeks attorneys' fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

## COUNT THREE – CLASS CLAIM AGAINST PINKERTON
### Failure To Provide "At The Time" Notice – 15 U.S.C. § 1681k(a)(1)

133.     Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

134.     The consumer report of the Named Plaintiff and of each member of the "Pinkerton Notice Class" was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

135.     As to the Named Plaintiff and the "Pinkerton Notice Class," Pinkerton uniformly fails to comply with the rigors of FCRA § 1681k(a)(2) and therefore must necessarily rely on its compliance with § 1681k(a)(1).

136.     On information and belief, the Plaintiff alleges that Pinkerton obtains public records including criminal records from a third-party consumer reporting agency and does not attempt to obtain this information through its own courthouse searches.

137.    On information and belief, the Plaintiff alleges that as to the "Pinkerton Notice Class," Pinkerton did not send such class members a notice pursuant to 15 U.S.C. § 1681k(a)(1).

138.    On information and belief, the Plaintiff alleges that as to the "Pinkerton Notice Class," Pinkerton did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within 30 days before it furnishes and resells these records in one of its reports.

139.    Pinkerton's failure to timely provide the required FCRA notices to the Plaintiff and other members of the "Pinkerton Notice Class" violated 15 U.S.C. § 1681k(a)(1).

140.    The conduct, action, and inaction of Pinkerton was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

141.    Plaintiff and other members of the putative "Pinkerton Notice Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Pinkerton in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT FOUR – CLASS CLAIM AGAINST PINKERTON
### Obsolete Information – 15 U.S.C. § 1681c(a)

142.    Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth herein at length.

143.    The consumer report about Ms. Doe reported numerous obsolete criminal arrest records that not only were expunged, but which antedated the report by more than seven years.

144.    Defendant Pinkerton violated 15 U.S.C. § 1681c(a)(2) by reporting arrest information that was not only expunged, it obviously antedated the report by more than seven years.

145.    Defendant Pinkerton knew that it was forbidden by the FCRA to publish criminal arrest information in a consumer report that is older than seven years, but despite this knowledge published the obsolete information anyway.

146.    As to the Named Plaintiff and the "Obsolete Information Class," Pinkerton regularly violates the prohibition on publishing obsolete information in violation of 15 U.S.C. § 1681c(a)(2).

147.    As a result of the publication of obsolete information, the Named Plaintiff and the "Obsolete Information Class" were subjected to the publication of information that was deemed obsolete by Congress and specially excluded from information permitted in consumer reports.

148.    The conduct, action, and inaction of Pinkerton was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

149.    Plaintiff and other members of the putative "Obsolete Information Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Pinkerton in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### COUNT FIVE – INDIVIDUAL CLAIM AGAINST TRINITY
### Obtaining or Using Employment-Purposed Consumer Report without a Permissible Purpose --15 U.S.C. § 1681b(f)

150.    Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth herein at length.

151.    Ms. Doe did not authorize the procurement of her consumer report for any reason other than an employment purpose.

152.    Pinkerton specifically disclaimed that the consumer report about Ms. Doe was to be used for an employment purpose or that the information could be relied upon as accurate.

153.    There is no other permissible purpose for which the consumer report by Pinkerton could have been obtained by Trinity.

154.    Because Defendant Trinity obtained a consumer report that was specifically not to be used to make an employment decision, Trinity violated 15 U.S.C. § 1681b(f) by using such a report to terminate Ms. Doe's employment.

155.    It was an invasion of Ms. Doe's privacy to obtain a consumer report for employment purposes and misrepresent to the consumer and consumer reporting agency the purpose of the consumer report.

156.    As a result of Trinity's use of Ms. Doe's consumer report for an employment purpose, Ms. Doe's privacy was invaded in violation of the statute.

157.    Plaintiff suffered actual damages, including without limitation, by example only and as described herein on her behalf by Counsel: loss of employment, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

158.    The conduct, action, and inaction of Trinity was willful, rendering it liable for actual, statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

159.    In the alternative, Trinity's actions were negligent, entitling Ms. Doe to relief pursuant to 15 U.S.C. § 1681o.

160.    Plaintiff is entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Pinkerton  in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**COUNT SIX – CLASS CLAIMS AGAINST PINKERTON**
**Providing Employment-Purposed Consumer Report without a Permissible Purpose –**
**15 U.S.C. § 1681e(a)**

161.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth herein at length.

162.     Ms. Doe did not authorize the procurement of her consumer report for any reason other than an employment purpose.

163.     Pinkerton specifically disclaimed that the consumer report about Ms. Doe was to be used for an employment purpose.

164.     There is no other permissible purpose for which the consumer report by Pinkerton could have supplied a consumer report about Ms. Doe or the class members to any employer.

165.     Because Defendant Pinkerton supplied consumer reports that were specifically not to be used to make an employment decision, Pinkerton violated 15 U.S.C. § 1681e(a) by providing such a report to terminate, or rescind the offer of, employment to Ms. Doe.

166.     Pinkerton did not have reasonable procedures in place to assure that it did not provide consumer reports to Trinity and other employers without a proper certification and verification that the reports were not being used for an employment purpose according to its disclaimer.

167.     It was an invasion of Ms. Doe's privacy to provide a consumer report that it knew or should have known would be used for employment purposes, but to disclaim its use for that purpose.

168.     As a result of Pinkerton's provision of Ms. Doe's consumer report for an employment purpose, Ms. Doe's privacy was invaded in violation of the statute.

169.     The conduct, action, and inaction of Pinkerton was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

170.     In the alternative, Pinkerton's conduct was negligent, entitling Ms. Doe to relief pursuant to 15 U.S.C. § 1681o.

171.     Plaintiff and other members of the putative "Impermissible Purpose Class" are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Pinkerton in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT SEVEN – INDIVIDUAL CLAIM AGAINST PINKERTON
### Failure To Ensure Maximum Possible Accuracy – 15 U.S.C. § 1681e(b)

172.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

173.     The consumer report about Ms. Doe inaccurately reported numerous erroneous, obsolete and expunged criminal records in a way that made it appear that the consumer had an active criminal record upon which an employment decision might be made, and indeed was made.

174.     Defendant Pinkerton violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding the Plaintiff.

175.     As a result of this conduct by Pinkerton, Plaintiff suffered actual damages, including without limitation, by example only and as described herein on her behalf by Counsel: loss of employment, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

176.    Pinkerton's violations of 15 U.S.C. § 1681e(b) were reckless or willful, rendering Pinkerton liable pursuant to 15 U.S.C. § 1681n.   In the alternative, Pinkerton was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

177.    Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from Pinkerton in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff and the putative Classes respectfully pray for the following relief:

A.  An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing the undersigned counsel to represent same;

B.  The creation of a common fund available to provide notice of and remedy Defendants' unlawful conduct;

C.  That judgment be entered for Plaintiff individually for actual and/or statutory damages and punitive damages against Pinkerton for violation of 15 U.S.C. § 1681e(b), pursuant to 15 U.S.C. §§ 1681n and 1681o;

D.  Statutory and punitive damages for all class claims;

E.  Equitable and/or injunctive relief;

F.  Attorneys' fees, expenses and costs; and

G.  Pre-judgment and post-judgment interest as provided by law.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

**JANE DOE,** *individually and on behalf of and all others similarly situated*

By:  */s/Mary Higgins*
Mary Higgins, DE ID No. 4179
Mary Anne McLane Detweiler, DE ID No. 3415

29

University Office Plaza
Commonwealth Building, Suite 201
260 Chapman Rd.
Newark, DE 19713
Telephone: (302) 894-4357
Email mary.higgins@letsbelegal.com
*Attorneys for the Plaintiff*

*Of Counsel:*
Susan Mary Rotkis
(*Pro hac vice Pending Motion for Admission to be Filed*)
Arizona State Bar No. 032866
Virginia State Bar. No. 40693
CONSUMER LITIGATION ASSOCIATES WEST, P.L.L.C.
382 South Convent Ave.
Tucson, AZ 85716
Telephone: (520) 622-2481
Email: srotkis@clalegal.com