# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No.  17-53-RGA-MPT |
| TRINITY LOGISTICS, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| PINKERTON CONSULTING AND | ) | |
| INVESTIGATIONS, | ) | |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Plaintiff Jane Doe, individually and on behalf of all other similarly situated individuals, brought this action against Trinity Logistics, Inc. ("Trinity") and Pinkerton Consulting and Investigations ("Pinkerton").[1]  In her complaint, plaintiff alleges defendants violated the Federal Fair Credit Reporting Act ("FCRA") by failing to provide a pre-adverse action notice, as required by 15 U.S.C. §§1681b(b)(3)(A)(i) and 1681b(b)(3)(A)(ii) by failing to provide a copy of the consumer report (Count I) and by failing to provide the Summary of Rights (Count II).[2]

Plaintiff further alleges Pinkerton violated §1681(k)(a)(1) for failure to provide an "at the time" notice (Count III), §1681c(a) for obsolete information (Count IV), §1681e(a)

---

[1] D.I. 38 at 1.
[2] *Id.* at 1, 22-24

for providing an employment-purposed consumer report without a permissible purpose (Count VI), and §1681e(b) for failure to ensure maximum possible accuracy (Count VII).[3] Additionally, plaintiff claims Trinity violated §1681b(f) for obtaining or using an employment-purposed consumer report without a permissible purpose (Count V).[4]

Currently before the court are, Pinkerton's individual motion to dismiss under Rule 12(b)(6); Trinity's motion to dismiss and/or to strike the class claims; and Pinkerton's motion to join in part and oppose in part Trinity's motion to dismiss.[5] Also before this court, is plaintiff's motion to strike Pinkerton's joinder motion to dismiss, or in the alternative, to deny the motion and construe it as a reply.[6]

## II.    PROCEDURAL HISTORY

Plaintiff originally filed individual claims against defendants for violations of FCRA.[7] Defendants answered and filed cross-claims.[8] Plaintiff filed a first amended complaint, adding class action claims.[9] Defendants filed separate motions to dismiss, to which plaintiff filed opposing responses.[10]

On August 3, 2017, plaintiff filed her second amended class action complaint against both defendants.[11] As a result, all motions filed prior to plaintiff's second amended complaint are moot.[12] Plaintiff's first amended complaint, defendants' partial

---

[3] *Id.* at 1, 24-26, 28-30.
[4] *Id.* at 1, 26-27.
[5] D.I. 46, 47, and 50.
[6] D.I. 54.
[7] D.I. 52 at 1.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] D.I. 38.
[12] D.I. 34-43

motions to dismiss the first amended complaint, and the parties stipulation for an extension of time for plaintiff to respond are no longer relevant to this court's analysis and need not be addressed.[13]  This court will only consider motions filed after, and in response to the second amended complaint.

After plaintiff filed her second amended complaint, each defendant separately filed individual motions on August 28, 2017.  Pinkerton filed a motion to dismiss Count I and Count II of plaintiff's second amended complaint pursuant to Fed. R. Civ. P 12(b)(6).[14]  In its motion to dismiss, Pinkerton argues, Trinity, as the employer, was the responsible party who took adverse action against plaintiff, claiming plaintiff acknowledged such in her second amended complaint.[15]  Further, Pinkerton did not make the decision regarding adverse action, nor is it responsible for issuing pre-adverse action notices to plaintiff or Class under 15 U.S.C. §§1681b(b)(3)(A)(i) and (ii).

Trinity filed a motion to dismiss and/or to strike class claims pursuant to Fed R. Civ. P. 12(b)(6) and 12(f), regarding the three counts against it, an individual count and two class action allegations.[16]  Trinity argues that plaintiff's individual claim is not viable because her second amended complaint actually alleges Trinity fulfilled its obligations under 15 U.S.C. §1681b(f), and plaintiff's class claims should be stricken.[17]

On September 18, 2017, Pinkerton filed a motion to join in part and oppose in part, Trinity's motion to dismiss the second amended complaint.[18]  Pinkerton supports

---

[13] D.I. 42.
[14] D.I. 46.
[15] *Id.* at 4.
[16] D.I. 47-48.
[17] *Id.* at 1-2.
[18] D.I. 50.

Trinity's motion to dismiss and/or strike class claims regarding Counts I and II, but opposes Trinity's motion to dismiss Count V, the individual claim against Trinity, which casts blame onto Pinkerton.

In her response briefs, plaintiff asserts Pinkerton adjudicated her consumer report and those of the members of the Class, when it "flagged" the consumer reports and verified that the criminal records contained in both plaintiff's and the class consumer reports precluded employment under its consumers' privacy, including Trinity's hiring criteria.[19]  She further alleges Pinkerton did not provide her or any class members with the pre-adverse action notices as required by §1681(b)(3)(A)(i) and (ii).[20] Additionally, plaintiff contends that her notice class definition is not a fail-safe class. The notice class is nearly identical to other classes that have been certified, and that striking the class definition at the pleading stage is unwarranted.  Plaintiff also asserts that she properly states an individual claim against Trinity.[21]

In addition, plaintiff filed a motion to strike Pinkerton's motion to join Trinity's motion to dismiss, or in the alternative, deny the motion and construe it as a reply.[22] Plaintiff claims Pinkerton "attempts to assert (1) defenses that it knew about and neglected to raise in its Rule 12 motion, without citation to any cognizable authority allowing it to do so; and (2) opposes a motion to dismiss that is not directed at it by raising a factual dispute without citation to grounds supported by any cognizable

---

[19] D.I. 51 at 3.
[20] *Id.* at 6.
[21] D.I. 52 at 9-18.
[22] D.I. 54.

authority."[23]

In its reply brief, Pinkerton contends that plaintiff argues legal conclusions, rather than addressing the facts.[24]  In Trinity's reply briefs to its motion to dismiss and/or strike class claims, it asserts that the notice class is a fail safe class, plaintiff cannot seek actual damages in a class action, and she has not alleged a violation of §1681(b)(f).[25]

Finally, on October 10, 2017, Pinkerton filed a response to plaintiff's motion to strike its motion to join, or deny the motion and construe it as a reply.[26]  Pinkerton argues that its motion was a responsive brief and notes that the parties' joint stipulation authorized until September 18, 2017 to respond to defense motions.  Pinkerton further contends it is not asserting waived defenses, nor raising new arguments not already before the court.[27]

## III.    BACKGROUND

Plaintiff is a "consumer" as defined by 15 U.S.C. §1681a, who is a Delaware resident, and brought this action on behalf of the "Notice Class" ("Class"), of which she is a member.[28]

Trinity, a privately-held for profit Delaware corporation founded in 1990 as a third-party logistics company, specializes in freight management and supply chain solutions.[29]  Both Trinity's principal place of business and headquarters are located in

---

[23] *Id.* at 2.
[24] D.I. 53 at 4.
[25] D.I. 55 and 56.
[26] D.I. 57.
[27] *Id.* at 3.
[28] D.I. 38 at 17-21.
[29] D.I. 38 at 7.

Delaware.[30]  Trinity conducts business and hires employees in Delaware and throughout the United States.[31]  As defined by 15 U.S.C. §1681a, Trinity is a "person" who uses consumer reports to make employment decisions and initiate adverse action against consumers.[32]

As part of its hiring process, Trinity relies on employment-purposed consumer reports.  These consumer reports are generated by Pinkerton.[33]  Because the employment decisions are based in whole or in part on the criminal information contained in the consumer reports, Trinity is obliged to adhere to certain restrictions of the FCRA.[34]

Pinkerton is a Delaware corporation, and a wholly owned subsidiary of Securitas Services, Inc., a subsidiary of Securitas Holdings, Inc., which is wholly owned by Securitas AB, a Swedish corporation.[35]  Pinkerton's principal place of business is in Ann Arbor, Michigan, but it conducts business and hires employees in Delaware and elsewhere in the United States.[36]  As defined by 15 U.S.C. §1681a(f), Pinkerton is a "consumer reporting agency" that sells, furnishes, and uses consumer reports and services in this jurisdiction.[37]  Trinity delegates the determination of an applicant's employability to Pinkerton, who applies Trinity's criteria to the applicant's consumer

---

[30] *Id..*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] D.I. 52 at 3.
[35] D.I. 38 at 4.
[36] *Id.*
[37] *Id.*

report after creating it.[38]

Pinkerton operates a large database of public records and related employment histories as a nationwide consumer reporting agency ("CRA").[39]  It uses the data to prepare and furnish consumer reports for employment and other purposes.[40]  Plaintiff claims Pinkerton provided consumer reports to prospective and existing employers, including Trinity, and prospective employers of the putative class members.[41]  These employers allegedly refused to hire Class members based on the contents of the consumer reports.[42]

Pinkerton provides federal, state, and county criminal searches, federal and state civil searches, employment history and education verifications.[43]  Its website contains compliance resources for disclosure and policy information that "may impact" its customers and their employees, including information about file disclosures, FCRA, notices to furnishers and users of information, and FCRA summary of rights.[44] Consumers may obtain a consumer disclosure, a copy of their consumer report, and submit a dispute on Pinkerton's website.[45]

Pinkerton claims to offer "fast and accurate" screening solutions by industry.[46]  Its website expressly disclaims any accuracy in its consumer reports, noting "Pinkerton

---

[38] D.I. 52 at 5.
[39] D. I. 38 at 4.
[40] *Id.*
[41] *Id* at 5.
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*

strives to deliver accurate and timely information products to assist its clients . . . .

These information sources are not maintained by Pinkerton, and Pinkerton cannot be a guarantor that the information provided from these sources is absolutely accurate. Pinkerton expressly disclaims any and all such warranties."[47]

Plaintiff contends she applied for a job at Trinity on or about August 6, 2016.[48] She completed an employment application, consumer report authorization, and release form.[49] She was contacted through email and by telephone by a Trinity employee, Hilary Wright, who offered her a job around August 22, 2016.[50] The employment offer was for a full-time position, starting on September 12, 2016, at twelve dollars per hour. Plaintiff accepted that day.[51] She executed the offer letter and returned it to Trinity. Plaintiff also completed the necessary paperwork, which she signed and delivered to the Trinity office.[52] Plaintiff submitted to a drug test, was given a tour of the Trinity job-site, introduced to new co-workers, and purchased new clothes for her position.[53]

Trinity obtained an employment-purposed consumer report regarding plaintiff from Pinkerton on August 25, 2016.[54] On August 26, Pinkerton furnished plaintiff's consumer report to Trinity through its standard procedures.[55] Plaintiff asserts Pinkerton, acting as Trinity's agent and the party responsible for making the actual hiring decision

---

[47] *Id.*
[48] *Id.* at 10.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 11.
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*

for Trinity, flagged the report as containing a criminal record, by marking it "Flagged Order."[56]

Plaintiff also maintains that Trinity and/or Pinkerton used the consumer report it obtained and/or created to take an adverse-employment action against her without informing her. Under its contract with Trinity, Pinkerton applied Trinity's pre-defined hiring criteria, and coded plaintiff as ineligible for employment.[57] Plaintiff asserts she was not provided a copy of the report containing a criminal record, a Summary of Rights under FCRA, or notified that she would not be hired.[58] Plaintiff further alleges Pinkerton's coding of the report as "Flagged Order" constituted an adverse action by Pinkerton and Trinity, which was based upon a "hit" regarding criminal records attributed to plaintiff that were furnished in her consumer report by Pinkerton.[59] The report included an inaccurate criminal record from Maryland, expunged four years before the report, and additional unadjudicated misdemeanor charges that should not have appeared in the report, because they predated the report by more than seven years.[60]

On August 26, 2016, Wright called plaintiff, informing her that Trinity had obtained a background screening which noted a criminal conviction and charging information.[61] Plaintiff explained that the conviction was improperly reported because it had been expunged in 2012.[62] After speaking to a company director, Wright contacted

---

[56] *Id* at 12.
[57] *Id.* at 12.
[58] *Id.*
[59] *Id.*; D.I. 50-1 Ex. A.
[60] *Id.*
[61] *Id.*
[62] *Id* at 13.

plaintiff terminating her employment.  Plaintiff alleges the termination is an adverse

action as defined in FCRA because Trinity did not supply her with a required copy of the

employment-purposed consumer report or notice that it had obtained a report that was

likely to adversely impact her employment.[63]

Plaintiff contends that the information Pinkerton obtained from the Maryland

clerk's office in Anne Arundel County contained records that were not expunged,

making it impossible for anyone to obtain her complete up-to-date record.[64]

On August 29, 2016, plaintiff contacted Wright, claiming she had not received a

"pre-adverse action letter" prior to her termination from employment.[65]  On August 31,

2016, Trinity sent plaintiff an email entitled, "Pre-Adverse Action Letter," which

contained:  (1) an undated Word document entitled "Requested Information" with an all-

capitalized warning, "THE FOLLOWING INFORMATION SHOULD NOT BE USED FOR

EMPLOYMENT DECISION PURPOSES"; (2) a Pinkerton Employment Screening report

requested by Trinity that noted, "Received: 8/25/2016" and "Completed 8/26/2016,"; and

(3) a summary of rights under the Fair Credit Reporting Act, with the New York State

Correction Law notice.[66]

Plaintiff claims to have called Pinkerton on August 31, 2016, advising that the

consumer report supplied to Trinity was inaccurate and resulted in an adverse impact

on her employment.[67]  A week later, on September 7, 2016, Trinity emailed plaintiff

---

[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] *Id.* at 14; D.I. 50-1 Ex. A
[67] *Id.*

which contained a "Final Adverse Action letter."  On the same date, Pinkerton's manager of the dispute department called plaintiff and advised that Pinkerton's records showed plaintiff had no criminal convictions.[68]  On September 8, 2016, Pinkerton mailed plaintiff a reinvestigation notice of the disputed information contained in her employment-purposed consumer report.[69]

Trinity allegedly certified to Pinkerton that it had a permissible purpose to obtain plaintiff's consumer report with the knowledge that Pinkerton expressly disclaimed the accuracy of its reports.[70]  Due to Trinity's actions and inactions, plaintiff claims to have suffered various injuries including loss of income and other economic losses, humiliation, damage to her reputation, emotional distress, deprivation of congressionally-mandated information, and invasion of her privacy.[71]

Additionally, as a result of Trinity's conduct, the Class allegedly suffered a deprivation of congressionally-mandated information; the loss of an opportunity to correct or explain information in their consumer reports before any adverse action was taken; and were fraudulently induced to authorize the use of consumer reports for employment purposes, which reports expressly disclaimed accuracy.[72]

Due to Pinkerton's actions and inactions, plaintiff claims to have sustained similar injuries as alleged against Trinity.[73]  The Class contends to have suffered a deprivation of congressionally-mandated information and the loss of an opportunity to correct or

---

[68] *Id.*
[69] *Id.*
[70] *Id.* at 16.
[71] *Id.*
[72] *Id.*
[73] *Id.* at 17.

explain information in their consumer reports before an adverse action occurred.[74]

## IV. GOVERNING LAW

### A. Motion to Dismiss Under 12(b)(6)

In analyzing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a review of Rule 8(a)(2) is necessary. A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[75] That standard "does not require 'detailed factual allegations,' but . . . demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."[76] In order to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[77] The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[78] Evaluating a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all material allegations of the complaint.[79] "The issue is not whether a plaintiff will ultimately prevail, but whether the complaint is entitled to offer evidence to support the claims."[80] A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the

---

[74] *Id.*

[75] Fed. R. Civ. P. 8(a)(2).

[76] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

[77] *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed R. Civ. P. 12(b)(6).

[78] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[79] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

[80] *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citations omitted).

light most favorable to the plaintiff, plaintiff is not entitled to relief."[81]

To survive a motion to dismiss under rule 12(b)(6), the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[82]  A plaintiff is required "to provide the 'grounds' of his entitle[ment] to relief" beyond "labels and conclusions."[83]  Heightened  fact pleading is not required:  rather "enough facts to state a claim to relief that is plausible on its face" must be alleged.[84]  Rejected are unsupported allegations, "bald assertions," or "legal conclusion."[85]  Further, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[86]  The analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[87]  Well-pled facts which only infer the "mere possibility of misconduct" do not show that "the pleader is entitled to relief" under Rule 8(a)(2).[88]  "When there are well-pleaded factual

---

[81] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).

[82] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

[83] *Twombly*, 550 U.S. at 555.

[84] *Id.* at 570.

[85] *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dimiss.") (citations omitted); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient.); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self evidently false" are not accepted.).

[86] *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (A court is "not bound to accept as true a legal conclusion couched as a factual allegation.").

[87] *Iqbal*, 556 U.S. at 679.

[88] *Id.*

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."[89]

### B. Motion to Strike Under 12(f)

In reviewing a motion to strike pursuant to Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."[90] "Immaterial matter is that which has no essential or important relationship to the claims for relief or the defenses being pleaded."[91] "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."[92] Scandalous matter has been defined as "that which improperly casts a derogatory light on someone, most typically on a party to the action."[93] Although motions to strike "serve to 'clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters,'" as a general matter, these motions are disfavored.[94] They "ordinarily are denied 'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'"[95] Therefore, even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion

---

[89] *Id.*

[90] Fed. R. Civ. P. 12(f).

[91] *Delaware Health Care, Inc. v. MCD Holding Co.,* 893 F. Supp. 1279, 1291-1292 (D. Del. 1995).

[92] Id. at 1292.

[93] *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 764 (D. Del. 2012) (quoting *Carone v. Whalen,* 121 F.R.D. 231, 233 (M.D. Pa. 1988)).

[94] *Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*, C.A. No. 09-300-LPS, 2011 U.S. Dist. LEXIS 17172, at *4 (D. Del. Feb. 22, 2011) (quoting *McInerney v. Moyer Lumber & Hardware*, *Inc.* 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).

[95] *Sun Microsystems, Inc. v. Versata Enters.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009) (quoting *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).

to strike should not be granted unless the presence of the surplusage will prejudice the adverse party.[96]  When ruling on a motion to strike, the court must construe all facts in favor of the nonmoving party, and only grant the motion when the allegation is clearly insufficient.[97]

### C.     Standard for Class Certification

Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure.[98]  The party seeking certification is required to satisfy the requirements of both Rule 23(a) and one of the subsections of Rule 23(b).[99]

First, the party seeking certification must establish the four requirements of Rule 23(a):  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[100] These four prerequisites are often referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

After all the requirements of Rule 23(a) are established, the certifying class must then satisfy one of the three subsections of Rule 23(b).  A class may be certified under Rule 23(b)(1), if the prosecution of separate actions would create a risk of inconsistent

---

[96] *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009) (internal quotations omitted).
[97] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).
[98] *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).
[99] *Id.* at 1234.
[100] *Yarger v. ING Bank, Fsb*, 285 F.R.D. 308, 2012 U.S. Dist. LEXIS 123927.

judgments.  Rule 23(b)(2) certifications are considered when the party opposing the class has acted or refused to act on grounds generally applicable to the class, justifying injunctive or declaratory relief.  Alternatively, as in the present case, a class may be certified under Rule 23(b)(3), where questions of law or fact common to members of the class predominate and a class action is superior to other available methods.[101]

Rule 23(b)(3) is commonly broken into a two-part analysis, involving predominance and superiority.  To meet the predominance requirement, a plaintiff must demonstrate:  "(1) that the existence of individual injury . . . was 'capable of proof at trial through evidence that [was] common to the class rather than individual to its members;' and (2) that the damages resulting from that injury were measurable 'on a class-wide basis' through use of a 'common methodology.'"[102]

The United States Supreme Court has cautioned, "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."[103]  "Merits questions may be considered to the extent–but only to the extent–that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[104]

## V.    ANALYSIS

### A.    Class Claims

---

[101] *Legge v. Nextel Communs., Inc.*, 2004 U.S. Dist. LEXIS 30333.
[102] *In re Heckmann Corp. Secs. Litig.*, 2013 U.S. Dist. LEXIS 79345, Fed. Sec. L. Rep. (CCH) P97,521.
[103] *Id.*
[104] *Id.*

Plaintiff brings this action on behalf of the Notice Class, of which she is a member, pursuant to Fed. R. Civ. P. 23(a) and 23(b).

### 1.    Rule 23(a) Requirements

#### a.    Numerosity

Numerosity requires the members of the class to be "so numerous that joinder of all members is impracticable."[105]  "No minimum number of plaintiffs is required to maintain a suit as a class action," but the Third Circuit has generally found that classes with over forty members satisfy the numerosity requirement.[106]

Here, plaintiff has met the numerosity prerequisite.  Plaintiff demonstrates that during the period in question, there were more than fifty members of the putative class. The exact size of the Class is within the exclusive knowledge of defendants, but potentially substantial number of class members is indicated, and absent a precise number, satisfy numerosity.  Moreover, defendants do not challenge numerosity.

#### b.    Commonality

Commonality  requires that a plaintiff must establish "there are questions of law or fact common to the class."[107]  "A finding of commonality does not require that all class members share identical claims."[108]  Rather, commonality requires "the plaintiff to demonstrate that the class members have suffered the same injury, which means more than that they have all suffered a violation of the same provision of law.  Plaintiffs must

---

[105] Fed. R. Civ. P. 23(a)(1).
[106] *Yarger*, 285 F.R.D. at 316-317; (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).
[107] Fed. R. Civ. P. 23(a)(2).
[108] *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 310 (3d Cir. 1998).

demonstrate that their claims depend on 'a common contention . . . of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"[109]

Here, plaintiff has satisfied the commonality prerequisite. Plaintiff asserts that common legal and factual questions exist as to all Class members in this matter, and include: whether the uniform failure to timely provide a copy of employment purposed consumer reports containing a negative public record violated the FCRA; whether the timing of defendant's notice to consumers that employment may be declined or terminated based on information contained in the consumer report was legally appropriate; and whether the adjudication of the plaintiff's application constituted adverse action. Defendants do not challenge commonality therefore, the commonality requirement is satisfied.

### c.    Typicality

Typicality requires that a plaintiff must establish that "claims or defenses of the representative parties are typical of the claims or defenses of the class."[110] The typicality requirement "is intended as a safeguard to insure that the named plaintiff's interests are substantially coextensive with the interests of the class."[111] The Third Circuit has identified three factors for determining whether typicality is satisfied: (1) the

---

[109] *Yarger*, 285 F.R.D. at 318; (quoting *Wal-Mart Stores, Inc. v. Dukes*, U.S., 131 S. Ct. 2541, 2548, 180 L. Ed. 2d 374 (2011).
[110] Fed. R. Civ. P. 23(a)(3).
[111] *In re Heckmann Corp. Secs. Litig.*, 2013 U.S. Dist. LEXIS 79345, Fed. Sec. L. Rep. (CCH) P97,521.

claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced, and (b) the factual circumstances underlying the theory; (2) the class representative must not be subject to a defense that is both inapplicable to many class members and likely to become a major focus of the litigation; and (3) the interests and incentives of the class representative must be sufficiently aligned with those of the class.[112]

Here, the typicality requirement is satisfied because plaintiff's claims are consistent with the claims of the Class members, as all members were similarly affected by defendants actions and/or inactions. The claims of the putative class representative are generally similar and sufficiently aligned with the potential class members. Again, defendants do not challenge typicality.

### d. Adequacy

Lastly, plaintiff must establish that "the representative parties will fairly and adequately protect the interests of the class."[113] "The courts in this circuit have applied a two-prong test to determine whether the named plaintiff has satisfied Rule 23(a)(4)."[114] "A named plaintiff is an adequate representative if (1) he has no interest antagonistic to the interests of the members of the class; and (2) his attorney is capable of prosecuting the claim with some degree of expertise."[115]

Here, plaintiff argues that she will fairly and adequately represent the interests of

---

[112] *Id.*
[113] FED R. Civ. P. 23(a)(4).
[114] *In re Heckmann Corp. Secs. Litig.*, 2013 U.S. Dist. LEXIS 79345, Fed. Sec. L. Rep. (CCH) P97,521.
[115] *Id.*

the Class, because her claims are the same as those of the Class, which arise from the same facts. Additionally, she retained counsel competent and experienced in complex litigation. Again, defendants do not challenge adequate and fair representation in their briefs.

### 2.    Rule 23(b)(3) Requirements

Since plaintiff has satisfied the requirements under Rule 23(a), she must now establish both requirements under Rule 23(b)(3):  "(1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[116]

### a.    Predominance

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, that is, issues common to class members trump individual issues, and do not require individual treatment regarding proof of the essential elements of the cause of action . . . ."[117] Whether an element requires individual or common treatment depends on the nature of the evidence that will suffice to resolve it.[118]  When an issue requires both individual and common proof, the court must determine which proof is key to its outcome.[119]

Plaintiff asserts the claims of the Class predominate over any individual facts or

---

[116] *Id.*
[117] *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001).
[118] *See In re Hydrogen Peroxide*, 552 F.3d at 311.
[119] *See In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162-63 (3d Cir. 2002).

legal issues present in the class claims and there are no factual or legal issues differing her from the Class.

### i.     15 U.S.C. §1681b(b)(3)(A)(i) and (ii)

Plaintiff argues defendants willfully violated 15 U.S.C. §1681b(b)(3)(A)(i) and (ii), by failing to provide a copy of the consumer report and a copy of the Summary of Rights as required by FCRA, to her and the Class members, before taking adverse action that was based in whole or in part on the consumer report.[120]  Additionally, plaintiff asserts that Pinkerton's flagged consumer reports,which contained adverse criminal records, s a violation of §1681b(b)(3)(A).[121]

For violations under 15 U.S.C. §§1681b(b)(3)(A)(i) and (ii), plaintiff must show defendants used a consumer report for employment purposes, and took an adverse action based on the report.  Additionally, she must show defendants failed to provide her with a copy of the report, or a written description of the rights of the consumer under these sections.[122]

The standard for an alleged willful failure to comply under §1681n was defined by the Supreme Court in *Safeco Insurance Co. of America v. Burr*, that "a company subject to the Fair Credit Reporting Act does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated

---

[120] D.I. 38 at 21-22.
[121] D.I. 38 at 22.
[122] 15 U.S.C. §1681b.

with a reading that was merely careless."[123]  The first part of the standard defined in *Safeco*, favors defendants' motion to dismiss because they argue that their alleged conduct did not violate any clearly established FCRA requirements.

Plaintiff maintains that defendants' conduct was reckless and they had to be aware of the violations under §1681b(b)(3)(A)(i), because they failed to provide her with the consumer report.  In *Safeco,* the Supreme Court stated "the common law has generally understood [recklessness] in the sphere of civil liability as conduct violating an objective standard:  action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"[124]  The Court further determined that there was "no indication that Congress had something different in mind," and saw "no reason to deviate from the common law understanding in applying the statute.  Thus, a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."[125]

Plaintiff claims she was terminated on August 26, 2016 by Wright through a telephone call in the absence of providing a copy of the consumer report.  She further alleges Trinity waited until August 31, 2016 to forward an email purporting to be a pre-adverse action letter.  The purported Pre-Adverse Action Letter, specifically advised that

---

[123] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045, 2007 U.S. LEXIS 6963.
[124] *Id.*; (quoting Farmer v. Brennan, 511 U.S. 825, 836).
[125] *Safeco Ins. Co.* at 1065-1066.

the information therein "should not be used for employment decision purposes."[126]

Trinity's termination of plaintiff on August 26, five days before the email was sent, demonstrates its failure to comply with the required statutes before an adverse action of termination occurred. An "'adverse action' is a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."[127]

A consumer must show that the consumer report was inaccurate and prove that the inaccuracy caused the alleged harm. Negligence liability typically turns on whether the defendant acted reasonably. To prove a claim for negligent failure to comply with FCRA, plaintiff must demonstrate a causal relationship between the defendant's FCRA violations and the claimed adverse action.

FCRA imposes civil liability upon a person who willfully obtains a consumer report for a purpose that is not authorized by the Act. However, §1681b(a)(3)(A) expressly permits distribution of a consumer report to an entity that "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."

Based on the factual allegations in plaintiff's second amended complaint, defendants' 12(b)(6) motions fail. Plaintiff has asserted common questions of law and fact, which exist for all Class members and predominate over any questions involving a

---

[126] D.I. 38 at 14.
[127] 15 U.S.C. §1681a(k)(1)(B)(ii); *Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532, 538, 2012 U.S. Dist. LEXIS 39863.

single individual Class member.  Even if defendants' actions are not found to be reckless, the facts alleged are sufficient for negligent disregard for the rights of plaintiff and the Class.  As provided in 15 U.S.C. §1681b, "in using a consumer report for employment purposes, before taking any adverse action . . ., the person intending to take such adverse action shall provide to the consumer," the required information.[128] Under the Fair Credit Reporting Act, a private right of action against businesses that use consumer reports but fail to comply due to negligent conduct is authorized, thereby allowing the affected consumer to recover actual damages.[129]

### b.    Superiority

"In addition to common questions of law and fact, Rule 23(b)(3) requires the class action to be superior to other available methods for litigating the claims."[130]  This inquiry requires analysis of the subsections of this rule.  The evaluation of these requirements involves a "balanc[ing], in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."[131]

There are four nonexclusive factors that a court considers under the superiority inquiry of Rule 23(b)(3):  (1) the interest of individual members of the class in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action.[132]

---

[128] 15 U.S.C. § 1681b

[129] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. at 53.

[130] *In re Heckmann Corp. Secs. Litig.*, 2013 U.S. Dist. LEXIS 79345, at 44.

[131] *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008); *see also* Fed. R. Civ. P. 23(b)(3)(A)-(D).

[132] *Yarger*, 285 F.R.D. at 328.

Here, plaintiff claims a class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Class is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit. Plaintiff has alleged sufficient facts in her second amended complaint to state a claim for relief, and her claims should not be stricken at this time.

### (i)  Impermissible Fail-Safe Class

Defendants contend that plaintiff's class definition constitutes an impermissible fail-safe class, because it would require the court to conduct mini-trials in order to discern whether each and every member of the putative class is fit to be included in any class, and result in an administratively unworkable lawsuit.

Courts decline to grant certification when a proposed class constitutes a fail-safe class, because such a class presents both logical and practical problems under the law.[133] A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim."[134] Thus, a fail-safe "class definition requires a determination on the merits before members are identified."[135]

In order for a class to be ascertainable, the class must be precisely defined "with reference to objective criteria" and "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the

---

[133] *Hurt v. Shelby County Bd. of Educ.*, No. 13-230, 2014 U.S. Dist. LEXIS 116491, at 18 (N.D. Ala. Aug. 21, 2014).

[134] *O.P. Schuman & Sons, Inc. v. DJM Advisory Grp., LLC*, 2017 U.S. Dist. LEXIS 22402; (*quoting Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)).

[135] *Id.*

class definition."[136]

When evaluating a fail-safe class, it is "necessary to arrive at a definition that is precise, objective, and presently ascertainable.  Where a proposed class requires the court to address the central issue of liability in the case, the class definition maybe untenable.  Definitions . . . should avoid criteria that are subjective or that depend on the merits."[137]  When a class definition involves an ultimate issue of liability, the court must conduct mini-hearings in order to determine the members of the class, rendering the process administratively infeasible and, therefore, unascertainable.[138]

The Third Circuit has not yet considered the permissibility of fail-safe classes. Other Circuits that have considered fail-safe classes are split.  The Sixth and Seventh Circuits hold that fail-safe classes are precluded from certification, however, the Fifth and Ninth Circuits rejected a rule against fail-safe classes.[139]

This circuit's law on class-action certification requires the action to satisfy the four requirements of Rule 23(a).[140]  Before considering class-action certification, courts

---

[136] *Hayes v. Wal—Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (*quoting Marcus v. BMW of North America LLC*, 687 F.3d at 593).

[137] *Jackson v. Se. PA Transp. Auth.*, 260 F.R.D. 168, 182 (E.D. Pa. 2009); *see also* William H. Rubenstein*, Newberg on Class Actions* § 3:6 (5th ed.) ("Class definitions that require a court to decide the merits of prospective individual class members' claims to determine class membership—sometimes referred to as "fail-safe" classes—may also run afoul of the definiteness requirement.").

[138] *See Kondratick v. Beneficial Consumer Disc. Co.*, 2006 U.S. Dist. LEXIS 4754 (E.D. Pa. 2006) ("[B]ecause mini-hearings on the merits are required here to determine class membership, this class definition is untenable and cannot be certified."); *Hayes*, 725 F.3d at 355.

[139] *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012); *see also Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011), accord *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 821, 2012 U.S. App. LEXIS 731.

[140] *Shelton v. Bledsoe*,775 F.3d 554, 2015 U.S. App. LEXIS 253.

examine the perquisites of this rule, which "have generally articulated this 'essential prerequisite' as the implied requirement of 'ascertainability' -- that the members of a class are identifiable at the moment of certification."[141]

The Third Circuit requires "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."[142]  The court further cautions against approving a method "that would amount to no more than ascertaining by potential class members' say so."[143]

Plaintiff is seeking certification of the following class of individuals:

All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who were employees of Trinity or who applied for an employment position with Trinity (b) as a part of this application process were the subject of a consumer report used by Trinity and/or Pinkerton on or after August 26, 2016, and through the pendency of this action (c) where that consumer report contained an item that would disqualify the person from such position under Trinity's hiring policies, (d) which consumer was not then approved or hired for the position, (e) and to whom Trinity did not provide a copy of the consumer report and other disclosures as required by 15 U.S.C. §§1681b(b)(3)(A)(i) and (ii) at least five business days before the date the employment decision was made.

Defendant contends the language of the Class definition essentially parrots the language of §1681b(b)(3), which is its namesake.  As a result, the court will be required to examine each and every background report and compare that to Trinity's alleged hiring policies, to discern whether any entry ran afoul of these policies.  Then the court would have to apply this section to each and every prospective class member to determine whether the statute was violated.

---

[141] *Id.*
[142] *Marcus v. BMW of North America LLC*, 687 F.3d 583, 593 (3d Cir. 2012)
[143] *Id.*

Defendant further maintains the above would run afoul of the superiority requirement under Rule 23. If the court is required to conduct a liability trial for each and every class member, the class litigation will be the same as litigating each and every claim by each and every plaintiff in separate trials.

Trinity argues that plaintiff fails to explain what, if any determination, will be needed after class certification. It maintains plaintiff seeks a determination at the certification stage, that (a) the putative plaintiffs were entitled to a copy of a consumer report and statement of rights under the FCRA, (b) this information was not provided to the putative plaintiffs in a timely manner, and (c) an employment decision was made adverse to the putative class. Since plaintiff's claims result in an arduous certification process and no certainty of a final outcome against Trinity, the class claims should be stricken.

Despite defendants' contentions, plaintiff has pled sufficient facts, which if accepted as true, state a claim for relief. Additionally, plaintiff's Class definition uses language that is legally objective and non-conclusory in defining potential members. For these reasons, plaintiff's class claims should not be stricken and/or dismissed at this stage.

**B.      Individual Claim Against Trinity (Count V)**

   **1.      15 U.S.C. §1681b(f)**

Plaintiff claims Trinity violated 15 U.S.C. §1681b(f) by obtaining or using an

employment-purposed consumer report without a permissible purpose. Specifically plaintiff contends Trinity obtained a consumer report that was not to be used to make employment decisions. Plaintiff asserts that Trinity's conduct, actions, and inactions in its use of the consumer report was willful and an invasion of her privacy, which resulted in her sustaining actual damages.

Trinity contends that plaintiff's individual claim lacks merit because both prongs of §1681b(f) were fulfilled. Under this section, "a person shall not use or obtain a consumer report for any purpose unless: the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and the purpose is certified in accordance with §1681e of this title by a prospective user of the report through a general or specific certification."[144] Trinity argues this section only requires a consumer report be obtained for a purpose authorized by the consumer, and that the purpose be certified to the consumer reporting agency.[145]

Under FCRA, "a person is permitted to use or obtain a credit report only if the purpose for obtaining the report is permitted under the Act."[146] Trinity, as a person under this Act, "may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless a clear and conspicuous disclosure has been made in writing to the consumer . . . and the consumer has authorized in writing the procurement of the report by that person."[147]

Plaintiff's second amended complaint acknowledges that on multiple occasions,

---

[144] §1681b(f)
[145] D.I. 55 at 6.
[146] 15 U.S.C. §1681b.
[147] *Id.*

she authorized the report for employment purposes, and that Trinity used the report for employment purposes. Plaintiff states, "Trinity disclosed to [her] it was going to obtain a report for an employment purpose, which she authorized."[148] Trinity then certified the permissive use to Pinkerton, the consumer reporting agency. However, plaintiff contends the report that Trinity actually obtained expressly prohibited the report to be used for employment purposes, as noted previously herein.

When plaintiff applied for the job at Trinity, she completed a consumer report authorization and release form.[149] Trinity purchased an employment-purposed consumer report about plaintiff from Pinkerton, which Pinkerton completed on August 26, 2016 consistent with its standard procedures.[150] Pinkerton then furnished the report to Trinity, and on September 8, 2016, Pinkerton sent plaintiff a reinvestigation of disputed information contained in plaintiff's employment-purposed consumer report via U.S. Mail.[151] This second report acknowledged that the initial report was inaccurate, but this new report contained accurate information. There were no criminal charges or convictions on plaintiff's record in the new report.[152] As a result, based on plaintiff's second amended complaint, she fails to state a claim against Trinity, for a violation of 15 U.S.C. §1681b(f) because she authorized the use of the report for such purposes.

### 2. Pinkerton's Opposition to Trinity's Motion to Dismiss

A motion to dismiss must be accompanied by supportive briefing unless a party

---

[148] D.I. 52 at 3.
[149] D.I. 38 at 10.
[150] D.I. 56 at 2.
[151] *Id.*
[152] *Id.*

advised the court that because of the nature of the motion, the involved parties believe no briefing is required.[153]  Pinkerton filed its motion to join in part and oppose in part to Trinity's motion to dismiss plaintiff's second amended complaint.[154]  Pinkerton maintained the word document with the capitalized warning mentioned herein, was the issue and not part of the final report Trinity obtained from Pinkerton.  Pinkerton conducted a review of its records and determined the undated word document was not part of the final report.

Here, Pinkerton's motion to join and opposition was a response to Trinity's motion to dismiss and meets local rules.  All parties entered into a joint stipulation stating, "the parties to this lawsuit, . . . hereby STIPULATE and AGREE that all parties shall have until September 18, 2017 to respond to defense motions to dismiss plaintiff's second amended complaint."[155]  Pinkerton met the deadline agreed upon in filing its motion to dismiss, which plaintiff answered and Pinkerton replied.  Similarly, Trinity filed its motion to dismiss, Pinkerton responded, and Trinity filed a reply.  Pinkerton concedes that its response to Trinity's motion should have been titled "Answer to Trinity's Motion to Dismiss," rather than "motion to join in part and oppose in part."  In any event, Pinkerton's motion clearly was a response to Trinity's motion to dismiss.

## VI.    CONCLUSION

For the foregoing reasons, it is recommend that:

(1)    Defendants' motions to dismiss and/or strike class claims be DENIED (D.I. 46, 47).

---

[153] D. Del. LR 7.1.2.
[154] D.I. 50
[155] D.I. 49 and 57.

(2)     Trinity's motion to dismiss the individual claim be GRANTED (D.I. 47).

(3)     Plaintiff's motion to strike Pinkerton's motion to join motion to dismiss, or in the alternative, deny motion and construe as a reply be DENIED (D.I. 54).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. DEL. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date: April 3, 2018                                    /s/ Mary Pat Thynge_____
                                                      Chief U.S. Magistrate Judge